J-A03001-25

J-A03004-25

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT O.P. 65.37**

| DALIN FUNDING, LP | : | IN THE SUPERIOR COURT OF |
|---|---|---|
| | : | PENNSYLVANIA |
| | : | |
| v. | : | |
| | : | |
| | : | |
| ANTOINE GARDINER | : | |
| | : | |
| Appellant | : | No. 445 EDA 2024 |

Appeal from the Order Entered January 5, 2024
In the Court of Common Pleas of Philadelphia County
Civil Division at No: 211001740

| DALIN FUNDING, LP | : | IN THE SUPERIOR COURT OF |
|---|---|---|
| | : | PENNSYLVANIA |
| | : | |
| v. | : | |
| | : | |
| | : | |
| ANTOINE GARDINER | : | |
| | : | |
| Appellant | : | No. 1591 EDA 2024 |

Appeal from the Order Entered May 7, 2024
In the Court of Common Pleas of Philadelphia County
Civil Division at No:  211001740

BEFORE:  STABILE, J., McLAUGHLIN, J., and LANE, J.

MEMORANDUM BY STABILE, J.:                    **FILED MAY 19, 2025**

These appeals, which we consolidate for disposition pursuant to Pa.R.A.P. 513, arise from the same lower court docket number and involve the same parties; therefore, we will address them together for ease of disposition.  Appellant, Antoine Gardiner ("Gardiner"), appeals from the

January 5, 2024, judgment of $5,307,787.42 entered in favor of Appellee Dalin Funding, LP ("Dalin"). Gardiner challenges the granting of summary judgment on the ground that there existed genuine issues of material fact as to whether he had defaulted on real estate loans obtained from Dalin. Upon review, we find merit in that issue; vacate the order of summary judgment; and remand for further proceedings.

Between 2008 and 2010, Dalin, a business focused on lending to investors, made approximately forty interest-only loans to Gardiner, a real estate investor. Motion for Summary Judgment, 9/1/23, at ¶ 11-13. The loans were secured by mortgages on properties owned by Gardiner. *Id.* This action involves Gardiner's default on 12 of the loans, which were secured by 13 of Gardiner's properties. *Id.* at ¶ 14. For each loan, Gardiner executed a promissory note with a 15% interest rate, an open-end mortgage and security agreement, and an assignment of rents, leases, and profits. *Id.* at ¶ 17.

Each mortgage required Gardiner to repay all sums due under the mortgage, note, and other loan documents, and required any modifications to be in writing. *Id.* The definition of "event of default" in the notes included "the nonpayment of any principal, interest or other indebtedness under this Note when due[.]" Complaint in Confession of Judgment, 10/21/21, Exhibits 6, 11, 16, 21, 26, 31, 34, 38, 43, 46, 49, 52, at section 9. Each note also contained a provision which allowed Dalin to confess judgment in the event of a default. *Id.* at ¶ 10. Each mortgage similarly provided that failure to make

the required payments would constitute an event of default, and that upon a default, Dalin could accelerate the debt and/or confess judgment. *Id.* Exhibits 2, 7, 12, 17, 22, 29, 32, 35, 39, 44, 47, 50, 53, 55, at ¶ 6, 7.

In 2010, Gardiner was in default on his loans, and in lieu of foreclosure, Dalin and Gardiner agreed that Dalin Property Management, LLC ("DPM") would collect rent on all Gardiner's properties, including properties not subject to the loans. Motion for Summary Judgment, 9/1/23, at ¶ 19. The rents would be deposited into a bank account controlled by Gardiner, and he would then provide Dalin with the lump sum of rents collected to cover Gardiner's obligations under the loans. *Id.* at ¶ 20. Gardiner does not dispute that this agreement was made. However, Gardiner claims that the parties agreed that DPM would only collect rent until the loans were satisfied, at which point Gardiner would transfer certain properties to Dalin, and Dalin would extinguish Gardiner's debt and consider the loans satisfied. *See* Response in Opposition to Summary Judgment, 10/20/23, at ¶¶ 1, 19.

Due to significant issues with DPM collecting rent, the agreement was abandoned in 2012. *See* Motion for Summary Judgment, 9/1/23, at ¶ 26. Gardiner then hired Jodi Helton to assist with rent collection on his properties. *Id.* at ¶¶ 26-27. As a result, Dalin and Gardiner agreed to modify Gardiner's loans. *Id.* at ¶¶ 30-35. The parties executed modified open-end mortgages and promissory notes. *See* Complaint, 10/21/21, Exhibits 1, 4, 5, 9, 10, 13, 19, 24, 25, 27, 30, 36, 37, 41, 42, 57, and 58. Dalin agreed to reduce the

interest rate from 15% to 10% and extend the maturity date to July 2017. In exchange, the unpaid interest and insurance charges would be added to the principal amount. ***See id.*** Exhibits 1, 5, 10, 20, 25, 30, 36, 42, and 58. The modified notes included a provision regarding the ratification of loan documents:

> The Loan Documents are in all respects ratified and confirmed by the parties hereto and incorporated by reference herein, and each of the Loan Documents and this Modification shall be read, taken and construed as one and the same instrument. Capitalized terms used herein and not otherwise defined shall have the meanings given to them in the Note. In the event of any conflict between the terms and provisions of this Modification and the terms and provisions of the Note, the terms and provisions of this Modification control.

***Id.*** at ¶ 3.

Again, Gardiner does not dispute that the loans were modified. He claims, rather, that there was only an agreement to reduce the interest rate and extend the maturity date. ***See*** Response in Opposition to Summary Judgment, 10/20/23, at ¶¶ 30-31. Gardiner contends that there was no agreement to add the unpaid interest and insurance charges to the principal. ***Id.***

In addition to the aforementioned loans, in 2007, American Loan 2, LLC provided Gardiner three additional loans which were secured by three of Gardiner's properties. For each loan, Gardiner executed a promissory note with a 16% interest rate, an open-end mortgage and security agreement, and an assignment of rents, leases, and profits. Complaint, 10/21/21, Exhibits

59-61, 64-66, 69-71. Shortly thereafter, American Loan assigned Gardiner's loans to RBA Capital, LP. *Id.*, Exhibits 62, 67, and 72. In 2012, RBA Capital assigned Gardiner's loans to Dalin. *Id.*, Exhibits 63, 68, 73. For purposes of this appeal, we will refer to the original 12 loans, plus the three additional loans acquired by Dalin, as "Gardiner's loans" or "the loans."

Gardiner ceased payments on all his loans in February 2014. Motion for Summary Judgment, 9/1/23, at ¶ 44-45. In March 2014, Dalin instituted foreclosure proceedings on five of Gardiner's properties. *Id.* at ¶ 46. Gardiner filed a Chapter 11 voluntary petition for bankruptcy in August 2015 and listed Dalin as a secured creditor. *Id.* at ¶¶ 46-47. Following Gardiner's bankruptcy filing, he continued to recognize Dalin as a mortgage holder on the properties, subject to the loans. In 2016, 2017 and 2019, Gardiner listed Dalin as the mortgage holder while seeking and/or renewing his property insurance policy. *Id.* at ¶¶ 49-54.

On October 21, 2021, Dalin filed a complaint in confession of judgment for $5,307,787.42, and attached to it, among other items, were copies of the modified promissory notes and mortgages executed and notarized on August 2, 2012. Dalin filed an affidavit of service on February 15, 2022, and attached a copy of the signed return receipt. On March 18, 2022, Gardiner filed a petition to open Dalin's confessed judgment.[1] In it, he argued (1) he was not

_____

[1] We could not locate an order entering the confessed judgment in the record pursuant to Pa.R.Civ.P. 2956 ("The prothonotary shall enter judgment in conformity with the confession.").

properly served with the complaint; (2) that the debts were satisfied in 2012 and 2013; and (3) that the date of the modified promissory notes was March 9, 2012, not August 2, 2012, and were for less money than indicated by the notes attached to the complaint. Gardiner attached mortgage satisfactions for each property, each consisting of three pages – the satisfaction purportedly signed by Dalin in August 2012, the signature of a notary public dated August 2, 2012, and the legal description of the property. Gardiner also attached modified promissory notes with a date of March 9, 2012, on the first page, and on the second page, an indication that it was signed and notarized on August 2, 2012. The confessed judgment was opened on June 14, 2022.

Dalin filed a petition to appoint a receiver on April 7, 2022, which was denied after bifurcated hearings. During the receivership hearings, and relevant to this appeal, Gardiner testified that he and Dalin agreed in 2010 that Dalin would collect rent from his properties for a period of 43 months, and at the end of that time, Gardiner's mortgages would be deemed satisfied. N.T. Hearing, 7/5/22, at 22-24. Thus, Gardiner believed that his debt to Dalin was satisfied at the end of 2013. *Id.*

Regarding the modified promissory notes and mortgages, Gardiner agreed that he met Dalin at a notary's office on August 2, 2012. *Id.* at 24-25. However, Gardiner claimed that the purpose of that meeting was for Dalin to sign and notarize mortgage satisfaction pieces for the properties secured by the loans pursuant to the 2010 agreement. *Id.* at 25, 73. The modified

loan documents attached to Dalin's complaint indicate that they were signed and notarized on August 2, 2012. Gardiner explained that he only signed one document on August 2, 2012, but he did not recall what that document was, and he denied signing and notarizing the modified loan documents. *Id.* at 35-36.[2] He claimed that he found out that the satisfactions were not filed during his bankruptcy proceedings, in 2020 or 2021. *Id.* at 36.

During Gardiner's deposition on January 17, 2023, Gardiner changed his testimony and stated that he and Dalin reached an agreement on March 9, 2012, but did not sign it in front of a notary until August 2, 2012. N.T. Deposition of Gardiner, 1/17/23, at 333-35; N.T. Deposition of Gardiner, 4/6/23, at 1069-70. However, he claimed that the modification was only to reduce the interest rate and extend the maturity date for one year. N.T. Deposition of Gardiner, 2/1/23, at 863-64. He further admitted to signing multiple documents in front of the notary on August 2, 2012. *Id.*

On November 9, 2022, Dalin served Gardiner with its first set of requests for admission pursuant to Pennsylvania Rule of Civil Procedure 4014, that sought admissions concerning the execution of the initial loans, the modifications of said loans, and whether Gardiner was in default on each loan. *See* Motion to Compel Discovery, 12/19/22, Exhibit C (requests for admissions). Gardiner did not answer, object, or respond within 30 days or

_____

[2] The notary confirmed Gardiner's testimony that he only signed one document on August 2, 2012. *See* N.T. Hearing, 6/15/22, at 119-20. Conversely, the notary testified that Dalin signed approximately 24 documents on the same day. *Id.*

at any time before the initial February 6, 2023, discovery deadline. As a result, the trial court issued an order that Dalin's requests for admissions were deemed admitted by Gardiner. *See* Pa.R.Civ.P. 4014(b); Order, 1/10/23.

Dalin filed a motion for summary judgment on August 24, 2023, and a corrected motion on September 1, 2023. Dalin claimed that there was no dispute of material fact because Gardiner admitted, by not objecting to the requests for admissions, that it was in default on the loans. It further argued that Gardiner's defense, that the parties reached an oral agreement in 2010 which satisfied Gardiner's loans, was incredible because his testimony regarding said agreement was inconsistent. On October 18, 2023, Gardiner filed a motion to withdraw his deemed admissions and to vacate the January 10, 2023, order declaring the admissions to be admitted. Gardiner filed an answer to Dalin's motion for summary judgment on October 20, 2023.

The trial court denied Gardiner's motion to withdraw his deemed putative admissions on December 7, 2023. On January 5, 2024, the trial court granted summary judgment in favor of Dalin and entered judgment in the amount of $5,307,787.42, plus interest and attorneys' fees and costs. Gardiner filed a timely notice of appeal on February 1, 2024 (445 EDA 2024). Thereafter, the trial court issued an order which provided, in part, that the stay of execution imposed on March 23, 2022, was lifted. Gardiner filed a second appeal, challenging the trial court's authority to lift the stay of

execution (1591 EDA 2024).  Both the trial court and Gardiner complied with

Pa.R.A.P. 1925.

At docket 445 EDA 2024, Gardiner raises thirteen issues for our review,

all related to the trial court's grant of summary judgment.  However, one issue

is dispositive:

> Whether the trial court erred in failing to apply the proper
> standard of review for summary judgment as to whether there is
> a genuine issue as to any material fact and resolving all doubts as
> to the existence of a genuine issue of material fact against the
> moving party.

Gardiner's Brief, at 6.  Gardiner claims that the trial court (1) disregarded

Gardiner's evidence of the 2010 agreement; (2) disregarded the fact that

Gardiner disputed some terms of the 2012 agreement with Dalin; (3) failed to

view the record in a light most favorable to Gardiner as the non-moving party;

and (4) improperly determined credibility to find there was no dispute of

material fact.  *Id.* at 50.

In reviewing the grant or denial of summary judgment, the standard of

review is *de novo*, and our scope of review is plenary.  *Khalil v. Williams*,

278 A.3d 859, 871 (Pa. 2022).

> We have explained that a trial court should grant summary
> judgment only in cases where the record contains no genuine
> issue of material fact, and the moving party is entitled to judgment
> as a matter of law.  It is the moving party's burden to demonstrate
> the absence of any issue of material fact, and the trial court must
> evaluate all the facts and make reasonable inferences in a light
> most favorable to the non-moving party.  . . . An appellate court
> may reverse a grant of summary judgment only if the trial court
> erred in its application of the law or abused its discretion.

*Id.* "[C]redibility of evidence is not a proper consideration at the summary judgment stage because the trial court may not enter judgment when the evidence depends on oral testimony." ***Gutteridge v. A.P. Green Services, Inc.***, 804 A.2d 643, 652 (Pa. Super. 2002) (citation omitted). "A witness['] credibility is a determination for the jury and necessarily creates a genuine issue of material fact." ***Gruenwald v. Advanced Comput. Applications, Inc.***, 730 A.2d 1004, 1009 (Pa. Super. 1999) (citation omitted).

Here, the trial court granted summary judgment because it determined that Gardiner admitted to being in default on his loans, so there was no genuine issue of material fact as to that issue:

> First, Dalin has established the existence of a contract: the fifteen (15) original notes and mortgages for the Gardiner Loans . . . along with the documentation for the modifications of the notes and mortgages for the twelve Gardiner Loans.
>
> Second, Dalin has established a breach as to all of the Gardiner Loans . . . . As a discovery sanction for Mr. Gardiner's refusal to respond to Dalin's [requests for admissions ("RFA")], the [trial] court has deemed admitted RFAs that all these loans have matured and are in default.
>
> Third, Dalin has provided evidence on the record from its mortgage servicer IFC of the resultant damages based on the outstanding balances of the fifteen (15) loans in the amount of $5,775,419.66.

Trial Court Opinion, 4/16/24, at 11. The admission of breach was based on Gardiner's failure to object or respond to Dalin's requests for admissions. During the discovery phase, Dalin requested the following admissions for each loan:

1. Admit that on [date], [Gardiner] executed an Open-End Mortgage and Security Agreement . . . as security for a loan of [amount] from [Dalin], which encumbers [address].

2. Admit that on [date], the [mortgage] was modified, and the maturity date of the loan was extended to July 31, 2017.

3. Admit that the [loan] has matured and is in default.

Motion to Compel Discovery, 12/19/22, Exhibit C (First Set of Requests for Admissions).

Requests for admissions "are a discovery tool intended to clarify issues, expedite the litigation process, and promote a decision based on the merits." **Joers v. City of Philadelphia**, 190 A.3d 797, 804 (Pa. Cmwlth. 2018). They are governed by Pennsylvania Rule of Civil Procedure 4014, which provides:

> A party may serve upon any other party a written request for the admission . . . of the truth of any matters within the scope of Rules 4003.1 through 4003.5 inclusive set forth in the request that relate to statements or opinions of fact or the application of law to fact, including the genuineness, authenticity, correctness, execution, signing, delivery, mailing or receipt of any document described in the request.

Pa.R.Civ.P. 4014(a). Each matter is deemed admitted unless "within thirty days after service of the request, . . . the party to whom the request is directed serves upon the party requesting the admission an answer . . . or an objection[.]" Pa.R.Civ.P. 4014(b). "Conclusions of law do not fall within the permissible scope of a request for admission under Rule 4014 and cannot be deemed admitted for failure to timely respond to a request for admissions." **Joers**, 190 A.3d at 805.

- 11 -

As written, Dalin's request for admissions regarding the breach of each loan was a conclusion of law and could not be deemed admitted under Rule 4014. The requests do not allege material facts that would constitute a breach, as they failed to set forth: (1) the material terms of the original agreements; (2) the terms of the modified agreements; (3) Gardiner's conduct which allegedly created a breach, *i.e.*, nonpayment; and (4) that Gardiner was not entitled to stop payment on the loans. The requests concerning whether Gardiner was in default on each loan go well beyond requests for "opinion of fact" or "application of law to fact" as permitted by Rule 4014. *See Brindley v. Woodland Village Restaurant, Inc.*, 652 A.2d 865, 872 (Pa. Super. 1995) (requests stating that a party was negligent or not negligent, as well as requests that set forth damages, were conclusions of law not subject to Rule 4014).

In addition to the deemed admissions, the trial court found there was no genuine issue of material fact because Gardiner's two defenses – that the debt was satisfied per an oral agreement between the parties in 2010 and that the 2012 modifications provided by Dalin were forgeries – "are not only implausible and illogical, but also lack any evidentiary support, are directly contradicted by the record, and have no legal basis." Trial Court Opinion, 4/16/24 at 11. It then provided nine reasons that Gardiner's argument that the parties had a 2010 oral agreement was defective, *see id.* at 11-15, and

five additional reasons why the argument that the 2012 modifications submitted by Dalin were forgeries was defective, *see id.* at 15-17.

In reviewing those reasons, it appears, as illustrated below, that the trial court engaged in credibility determinations to find no genuine issues of material fact:

- "The idea that an investor with a multi-million-dollar real estate portfolio would have no record and no specifics relating to such a wildly beneficial arrangement beggars belief." *Id.* at 12.

- "Mr. Gardiner's account of the 2010 agreement is, frankly, fantastical." *Id.* at 13.

- "There is no rational basis for Dalin to have entered such an agreement." *Id.*

- "Mr. Gardiner's second defense . . . suffers from similar logical inconsistencies and legal infirmities." *Id.* at 15-16.

- "Fourth, [the defense] is unbelievable." *Id.* at 16.

Here, viewing the evidence in the light most favorable to Gardiner as the non-moving party as required, we are constrained to conclude that summary judgment was not warranted. Dalin alleged facts sufficient to establish a *prima facie* case of breach of contract. However, there is a dispute as to when, and if, the loans and promissory notes were modified, what the terms of the modification were, and whether the loans were satisfied.

Gardiner testified that he and Dalin reached an oral agreement in 2010 wherein Dalin would collect rent on Gardiner's properties for 43 months, and at the end of that time, all of Gardiner's loans would be satisfied. He also

- 13 -

testified that in 2012, the parties agreed to modify the mortgages and notes by reducing the interest rate and extending the maturity date, but not increasing the principal, as alleged by Dalin. In exchange, Dalin would sign and provide Gardiner with mortgage satisfaction pieces to be filed at the end of 2013. Lastly, Gardiner submitted purported satisfaction of mortgage pieces dated August 9, 2012, to prove that his loans were satisfied in the manner he had described.

In contrast, Dalin claimed that Gardiner was in default on his loans in 2010 and in lieu of default, agreed to collect rent on Gardiner's properties and applied it to Gardiner's debt. Due to issues with collecting rent, Dalin claimed that the agreement ended, and instead agreed to modify the terms of the loans. Dalin contends that the parties agreed to reduce the interest rate on all the loans from 15% to 10%, extend the maturity date to July 2017, and add the unpaid interest and insurance charges to the principal amount.

To support its position, Dalin attached numerous loan documents to its complaint, as well as its motion for summary judgment. However, a review of the documents uncovered a number of discrepancies. Despite Dalin's contention that the parties executed modified mortgages and notes on all of Gardiner's properties in 2012, he failed to attach said modified mortgages and notes for three properties: 5043 Lancaster Avenue, 1833 North 54th Street, and 1803 West Erie Avenue. Additionally, Dalin failed to attach the original note for 2119 North Redfield Road, and the executed note for 2228 Georges

Lane. Moreover, Dalin attached the original documents for the three loans between Gardiner and American Loan 2. While Dalin included the assignments of mortgages to itself, it failed to include the assignment of the promissory notes or newly executed notes between Dalin and Gardiner.

In granting summary judgment, the trial court usurped the role of the factfinder by determining that Gardiner's oral testimony was incredible and resolving the material issue of whether Gardiner had defaulted on his loans. *See Gutteridge*, *Guenwald*, *supra.* Because it is the sole province of the factfinder at trial to determine the credibility of witnesses, including Gardiner, the trial court erred in granting summary judgment on that basis. Moreover, the trial court resolved any doubts as to the existence of material facts in favor of the moving party, Dalin, in contravention of the rules governing summary judgment. *See Khalil, supra* (explaining that, on a motion for summary judgment, the trial court must make reasonable inferences in a light most favorable to the non-moving party).

Accordingly, this Court concludes that the trial court erred as a matter of law in granting Dalin's motion for summary judgment. We therefore vacate the trial court's order and remand for additional proceedings.

In the consolidated appeal, docketed at 1591 EDA 2024, Gardiner challenges the trial court's authority to lift the stay of execution. On March 23, 2022, the trial court issued a rule to show cause why Gardiner's petition to strike or open confession of judgment should not be granted. The Order

provided that "[e]xecution proceedings, if any, are STAYED until further order." Order, 3/23/22. The trial court lifted the stay by order on May 6, 2024, after the notice of appeal was filed in docket 445 EDA 2024.

Based on our disposition of 445 EDA 2024, vacating the summary judgment order, the appeal at 1591 EDA 2024 is now moot. We have explained the doctrine of mootness as follows:

> As a general rule, an actual case or controversy must exist at all stages of the judicial process, or a case will be dismissed as moot. An issue can become moot during the pendency of an appeal due to the intervening change in the facts of the case or due to an intervening change in the applicable law. In that case, an opinion of this Court is rendered advisory in nature. An issue before a court is moot if in ruling upon the issue the court cannot enter an order that has any legal force or effect.

**M.B.S. v. W.E.**, 232 A.3d 922, 927 (Pa. Super. 2020) (citation omitted). Mootness may be raised *sua sponte* because this Court "cannot decide moot or abstract questions, nor can we enter a judgment or decree which effect cannot be given." **Id.** (citation omitted). Because we have vacated the order granting Dalin summary judgment, there no longer is a judgment that may be executed upon. Therefore, the issue of whether the trial court erred in lifting the stay of execution is now moot.

Summary judgment order vacated in appeal at 445 EDA 2024; case remanded for further proceedings consistent with this memorandum. Appeal at 1591 EDA 2024 dismissed as moot. Jurisdiction relinquished.

- 16 -

J-A03001-25

J-A03004-25

Judgment Entered.

Benjamin D. Kohler, Esq.
Prothonotary

Date: 5/19/2025